IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MUELLER WATER PRODUCTS, INC.<br>and ANVIL INTERNATIONAL, LLC, | |
| Plaintiffs, | CIVIL ACTION NO.<br>1:12-cv-3446-JEC |
| v. | |
| VICTAULIC COMPANY, | |
| Defendant. | |

## <u>ORDER & OPINION</u>

This case is before the Court on defendant's Motion to Dismiss or Transfer [6], plaintiffs' Motion to Stay [18], defendant's Motion to Seal [19] and defendant's Motions for Leave to File Supplemental Material [23] and [24].  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Dismiss or Transfer [6] should be **DENIED without prejudice**, plaintiffs' Motion to Stay [18] should be **GRANTED**, defendant's Motion to Seal [19] should be **GRANTED as unopposed** and defendant's Motions for Leave to File Supplemental Material [23] and [24] should be **GRANTED**.

## BACKGROUND

Plaintiffs Mueller Water Products and Anvil International have filed this declaratory judgment seeking an order that certain patents owned by defendant are invalid and are not infringed. (Compl. [1] at ¶ 1.) Plaintiffs and defendant are competitors in the water infrastructure industry, specifically the market for grooved and plain-end mechanical pipe joining systems. (*Id.* at ¶¶ 8, 13.) The patents at issue are U.S. Patent No. 7,086,131 ("the '131 patent") and No. 7,712,796 ("the '796 patent"). (*Id.* at ¶¶ 16, 20.) They both relate to deformable mechanical pipe couplings that are configured to join together two end portions of pipe elements in a sealable manner. (*Id.* and Pls.' Br. in Supp. of Mot. to Stay ("Pls.' Br.") [18] at 7-9.)

In January 2012, plaintiffs filed an *inter partes* reexamination request with the U. S. Patent and Trademark Office ("USPTO") of the '131 patent. (Compl. [1] at ¶ 32.) Finding that the request met its reasonable likelihood of prevailing standard, the USPTO granted the request for reexamination. (*Id.* at ¶¶ 33-34.) A few weeks later, plaintiffs filed an *inter partes* review of the '796 patent. (*Id.* at ¶ 36.) The USPTO granted reexamination as to some of the claims in the '796 patent, but denied reexamination as to certain other claims. (*Id.* at ¶ 37.) In response, plaintiffs filed an *ex parte* reexamination request of the denied claims. (*Id.* at ¶ 38.)

2

In September 2012, plaintiffs unveiled their new SlideLOK coupling product at a Las Vegas trade show known as the MINExpo. (Compl. [1] at ¶ 10.)  Defendant also attended the MINExpo trade show.  (*Id.* at ¶ 42.)  At some point during the show, several of defendant's employees viewed the SlideLOK and had some discussions with plaintiffs' representatives concerning the product.  (*Id.* and Done Decl. [1].)  The substance of those discussions is disputed. (Sargent Decl. [6] and First Bauer Decl. [6].)

Two days after the conclusion of the MINExpo, defendant's counsel wrote a letter to plaintiffs requesting three samples of the SlideLOK coupling for "evaluation vis-a-vis Victaulic's patent portfolio." (Victaulic Letter, attached to Compl. [1] as Ex. G.) The letter sates:

> We represent Victaulic Company ("Victaulic") with regard to certain intellectual property matters.  We write regarding Anvil's new coupling, which we understand Anvil is calling the "SlideLok" coupling and promoting as an "Installation-Ready" coupling.

> Victaulic is the leader in INSTALLATION READY™ coupling technology, with a portfolio of patents and pending applications covering various aspects of that technology.  In fact, as I am sure you know, Anvil has requested that the Patent Office reexamine a couple of those patents.

> We request that three samples of the SlideLok coupling be sent to us for evaluation vis-a-vis Victaulic's patent portfolio.  In addition, if Anvil believes that the SlideLok coupling and the use of that coupling do not infringe any Victaulic patent, please provide the basis for that belief.

3

> We stress that Victaulic is not currently asserting that the SlideLok coupling or use of that coupling infringes any Victaulic patent. We simply request samples of the coupling and the basis of any non-infringement contention by Anvil to evaluate and determine if there are any issues that should be addressed by Victaulic and Anvil.

(*Id.*)

On October 3, 2012, less than a week after receiving the letter and before responding or sending samples to defendant, plaintiffs filed this declaratory action. (*See* Compl. [1] and Bucher Dec. [6] at ¶ 14.) On October 11, 2012, plaintiffs sent the requested coupling samples to defendant. (Hyland Letter, attached to Def.'s Mot. to Dismiss [6] as Ex. 21.) Defendant subsequently filed suit against plaintiff Anvil in the Eastern District of Pennsylvania, alleging that the SlideLOK coupling infringes on the '131 and the '796 patents. *Victaulic Co. v. Anvil Int'l, LLC*, Civ. No. 5:12-CV-05985-SD, Compl. at Dkt. No. [1] (E.D. Pa. Oct. 19, 2012).

Defendant has now filed a motion urging the Court to dismiss or transfer this case to Pennsylvania, where its own action is pending. (Def.'s Mot. to Dismiss or Transfer [6].) Plaintiff has filed a motion to stay the case pending the USPTO's ongoing reexamination proceedings concerning the '131 and '796 Patents. (Pl.'s Mot. to Stay [18].) In connection with the motion to stay, defendant has filed motions to seal certain exhibits and to submit supplemental material. (Def.'s Mot. to Seal [19] and Mots. for Leave to File

4

Supplemental Materials [23] and [24].)  The Court **GRANTS** defendant's motion to seal [19] **as unopposed** and also **GRANTS** defendant's motions to supplement [23] and [24].  The Court has considered the supplemental material submitted by defendant in ruling on the motions to stay [18] and dismiss [6].

### DISCUSSION

As discussed above, the '131 and '796 patents are the subject of ongoing USPTO reexamination proceedings.  (Compl. [1] at ¶¶ 32-38.) During those proceedings, the USPTO will reevaluate the validity and scope of the '131 and '796 patents.  *See* 35 U.S.C. §§ 302, 311.  As a result of the proceedings, certain claims in either patent may be upheld, amended or invalidated.  35 U.S.C. § 307.  Because of the potential impact of the USPTO's decision on any patent claims, courts frequently stay patent litigation pending the outcome of an ongoing USPTO reexamination.  *See Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983)("One purpose of the reexamination procedure is to eliminate trial of [validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).") and *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.,* 633 F. Supp. 2d 1341, (S.D. Fla. 2008)(recognizing a liberal policy in favor of granting stays).

The Court has broad discretion to grant or deny a stay of this

action pending USPTO reexamination of the patents in suit. *Gould,* 705 F.2d at 1342. *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21 (1983)(noting the district court's discretion to stay proceedings incident to the court's power to control its own docket). In exercising that discretion, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to defendant, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *See Cheng v. Sighting Sys. Instruments, LLC,* No. 1:06-cv-2326-WSD, 2007 WL 1341119, at *2 (N.D. Ga. May 3, 2007)(Duffey, J.)(citing *Xerox Corp. v. 3Com Corp.,* 69 F. Supp. 2d 404, 406-07 (W.D.N.Y .1999)) and *Southwire Co. v. Cerro Wire, Inc.,* 750 F. Supp. 2d 775, 778 (E.D. Tex. 2010)(applying the same factors).

All of the relevant factors favor a stay in this case. As an initial matter, this case is in its earliest stages. Defendant has not filed an answer and no discovery has been conducted. Courts have readily granted stays under similar circumstances. *See Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.,* 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987)("In cases which have not progressed beyond . . . initial litigation stages, the reexamination procedure should be *utilized.*") and *Snyder Seed Corp. v. Scrypton Sys. Inc.,* 52 U.S.P.Q.

6

2d 1221, 1223 (W.D.N.Y. 1999)(noting that reexamination provides an "inexpensive, expedient means of determining patent validity" when the infringement litigation is in the early stages).

It is also likely that the reexamination will simplify the issues in the case.  In granting the *inter partes* reexamination requests, the USPTO found that plaintiffs presented a "reasonable likelihood of prevailing" on invalidity claims for the '131 and '796 patents based on prior art not previously considered.  (Pls.' Br. [18] at 5, 14.)  The USPTO further recognized that plaintiffs' request for *ex parte* reexamination of the '796 patent presented a substantial new question of patentability.  The validity and scope of the '131 and '796 patents are central issues in this case.  (Compl. [1] at ¶¶ 57-105.)  The USPTO's resolution of these issues prior to discovery will potentially save substantial time and effort and might lead to settlement or dismissal of the case.  *See MercExchange, L.L.C. v. eBay, Inc.,* 500 F. Supp. 2d 556, 563 (E.D. Va. 2007)(a court may opt to stay a patent case "in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial resources").

Finally, it is noteworthy that it is the plaintiff in this action that is seeking the stay.  As defendant points out, it would seem to be an inconsistent litigation strategy for a plaintiff to file suit and then soon thereafter ask that the court not proceed

7

with the action that the party had just filed. (Def.'s Resp. [20] at 9.) Defendant argues that plaintiff has only filed suit, and then sought a stay, in order to gain a tactical advantage. Defendant notes that a stay will result in the prolonged sale of the SlideLOK couplings in the marketplace, and that is undoubtedly true. (Def.'s Resp. [20] at 7-12.) But any lost sales to defendant that are ultimately determined to be the result of infringement can be compensated by money damages. *See Tomco Equip. Co. v. S.E. Agri-Sys., Inc.,* 542 F. Supp. 2d 1303, 1308 (N.D. Ga. 2008)(finding no prejudice where damages could be remedied by money). Defendant's suggestion that the SlideLOK is somehow defective and will cause irremediable marketplace injury is rebutted by plaintiffs' evidence that there has never been a single corroborating report to indicate any problems with the product. (Radzik Decl. [22] at Ex. B.)

Defendant also argues that it will be tactically disadvantaged by a stay because the resulting delay will effectively preempt the Pennsylvania action, which was brought by defendant against plaintiff Anvil, after plaintiffs Anvil and Mueller filed suit in this district against the defendant. (Def.'s Resp. [20] at 21 ("If this [NDGa] case is stayed, and the Eastern District of Pennsylvania Court strictly follows the first filed rule, plaintiff Anvil will have achieved the unfair tactical advantage of preempting the [Pennsylvania] infringement case....").)

8

Yet, it is not clear that our sister court in Pennsylvania will "strictly" follow the first-filed rule, under these peculiar circumstances, particularly given how transparent defendant argues plaintiffs' ploy to have been.  At any rate, defendant can make its arguments against a stay of the Pennsylvania action before that court.  If the latter finds those arguments meritorious, the Pennsylvania action can proceed.

In sum, the Court finds that the relevant factors weigh in favor of staying this litigation pending the ongoing USPTO reexaminations of the '131 and '796 patents.  Accordingly, the Court **GRANTS** plaintiffs' motion for a stay [18].  Pursuant to defendant's request, the case will be **ADMINISTRATIVELY TERMINATED** during the stay.  Either party may reopen the action within sixty (60) days of the USPTO's decision on the pending reexaminations or, at any time, for good cause shown.[1]  In conjunction with this order, the Court **DENIES without prejudice** defendant's motion to dismiss or transfer [6].  If

---

[1]   An example of good cause might occur if our sister court in Pennsylvania determines that a stay was not warranted based on the pending patent reexamination, but instead was necessary because, as the first-filed action, the case in this district must proceed first. In that event, the Pennsylvania action would effectively become a hostage to the case in this district.  If, on the other hand, our sister court likewise decides that it too would stay the litigation pending the patent reexamination, nothing would be gained by the undersigned tackling what could be a thorny jurisdictional question in a case that might be eventually mooted by the patent reexamination decision.

the case is reopened, defendant should advise the Court within twenty

(20) days whether it wishes to reactivate its motion to dismiss [6].

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** without prejudice

defendant's Motion to Dismiss or Transfer [6], **GRANTS** plaintiffs'

Motion to Stay [18], **GRANTS as unopposed** defendant's Motion to Seal

[19] and **GRANTS** defendant's Motions for Leave to File Supplemental

Material [23] and [24].  This action is **STAYED** and **ADMINISTRATIVELY**

**TERMINATED** pending the ongoing USPTO reexaminations concerning

patents '131 and '796.  Either party may reopen the case by filing a

motion so requesting within **sixty (60) days** of the USPTO's decision

on the pending reexaminations or, at any time, for good cause shown.

SO ORDERED, this 25th day of September, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)